Good morning, everyone. We'll take the cases up in the order in which they appear on the docket, and I'll take this last chance to thank Judge Hinkle from the Northern District of Florida for joining us and helping us out with our calendar. All right, let's see, U.S. v. Cruz Delgado is submitted, Waldron v. Kijikazi is submitted, and we'll take up U.S. v. U.S. Forest Service. May it please the Court, Michael Berger for the appellants. The Supreme Court has simplified our task in this case by eliminating the so-called jurisdictional issue underlying the Quiet Title Act statute of limitations. Far from being either jurisdictional or mandatory, the Supreme Court described this statute of limitations in the Quiet Title Act as a, quote, mundane claim processing rule, something at a pretty low level. In that light, it is no more than an affirmative defense that must be pleaded and proved by the government. And I should point out that according to the district court's opinion that dismissing this case, that court said, quote, defendants did not raise the statute of limitations as grounds for dismissal. In that case, it's waived. That allows us to focus on the real issue in this case, and that is the meaning of what the parties called a, quote, conservation easement. The key to that easement is the language that was used in the easement by the parties to describe what it was that was actually being transferred. We have a number of places to look for that. First is the label they put on the document, the easement deed. It's called a, quote, conservation easement. The government has sometimes in its briefing referred to this as a, quote, public trail easement, capitalizing those words as if that means something. That phrase appears nowhere in the easement deed that the parties signed. And I would point out again that it was the government that drafted that deed. Counsel, I'm very sympathetic to your argument about the contract, but before we get there, I want to just dispose of the statute limitations issue. Admittedly, now that Wilkins has come out, there's no jurisdictional issue, but you still have to address the normal defenses that might be raised. I guess the question I would have is the government, certainly the district court, took the position that there's no equitable estoppel to toll the running of the 12-year statute limitations, but when did the statute begin from your perspective? When did it begin to run? From my perspective, probably in about 2014 when the government formally announced what it was planning to do, and that became apparent to my clients that it was way beyond what was written in this easement deed. Okay, so from your perspective, if you look at the contract, it didn't contemplate a gravel road, and it was only when that occurred that the statute of limitations ran. We really don't even need to look at equitable principles. You just look at straightforward statute of limitations applications from your perspective. I believe that, Your Honor. It seems to me that the wording of the deed shows that what was contemplated was simply granting the public a right which the property owners, both the current ones and their predecessors, had always granted to the public as a matter of grace. That is, the right to use the path that had been across this property for pedestrians, for horses, for snowmobiles, but they had no right to that. This deed gives the public a right that it did not have before, and it seems to me that's important, but that was a right to continue using a bucolic dirt trail, not building something that is quite intrusive into this forested area. I want to push on that a little bit, and what you're talking about is the use language. That's an exception to a right reserved to the landowner. I want to go back to the actual grant in the deed, and it grants unto the United States and its successors all right, title, and interest in the land described in Part 2 below, and that's the land where the easement issue is. So this is a grant of all right, title, and interest in that property, and then it says accept those rights and interests specifically reserved by the grantor in Part 3. So it seems to me that the grantor granted it all to the government except those rights specifically reserved, and the right specifically reserved further down in the deed is to exclude people except you can't exclude people from using the trail. You seem to take that latter part and act as if that's the entire grant. What do you do with the language at the beginning that grants all right, title, and interest? What I do with the language at the beginning is what I do with the language of the entirety of this easement deed, which is what its purpose was, was to preserve the natural scenery in this area. It wasn't to grant, and even though it says it grants all right, title, and interest, that has to be read in conjunction with what the purpose of this deed was, and the purpose of this deed is clearly expressed in it that it was to increase the restrictions on the use of this land. Can I just jump in here if I may, because it looks like my colleague and I may view this a little bit differently, because in Section 3k of the deed, it says, nothing herein contained shall be construed as affording the public access to any portion of granted the right to permit public use of the following, and then one is a strip of land to be utilized as a trail in that portion of the easement area within Sections 9, 15, and 16 as shown in Exhibit D. The total right of way width of the trail easement shall be 30 feet. The following uses are allowed on the trail, snowmobiles, snow grooming equipment, bicycle, horse, and foot certainly doesn't grant public access except as provided here, but I am troubled by this. How do we construe trail? Is that under Idaho law? Is that under United States law? And if so, what are the references you would give us? Well, I did provide a fair amount of Idaho law in the on either federal or Idaho law. The federal law is clear that Idaho law would prevail, and it would seem to me that the word trail is a fairly common sense word, especially in the context of this case where there has been a preexisting dirt trail along this area that has been open to public use at the permission of the owners. So is this, is the trail in question one that has existed prior to the conservation easement being granted, and this simply recognizes that the public has the right to use that? Is that what it is? That's what it is, Your Honor. The trail has always been there, and both the current owners and their predecessors had allowed the public to use that trail for the same uses that are listed there, the I suppose codified in this easement deed. Do you have any sense, does the record reflect, how long the trail in its unimproved status has existed prior to the grant of the conservation easement? I don't recall what the record reflects as to that, except that it had been historically used. Okay. So basically, Idaho law would control, from your perspective, the fact that there's a right, simply from your perspective, not codified, but basically puts in writing what already the grantors had done, but no more. We could call it formalized rather than codified. Sure. This is what the use was. It's not that there's something new being put in, and that's where we differ with the government, of course. The government thinks that this deed gives them the right to build or construct or develop something, and none of those concepts appear in this deed anywhere. Is there anything in the record that shows how the government or private landowners treated similar language in that part of Idaho in connection with conservation easements? I don't recall anything in the record that does that, what the words of this document are. It is a conservation easement, not a right-of-way easement or a public trail easement. If they wanted to call it that, they could have. They drafted this thing, and the public trail easement doesn't come in, and it's almost as an afterthought at the very end of the document. Oh, by the way, the public will have a right to use this area as a trail. From your perspective, the grantors did not know about the design of the trail where gravel was used until 2014. They filed the lawsuit within the 12-year period. You don't even have to get to equitable principles. Is that correct? That's my position, yes, sir. Okay, and you're looking to return this to the district court to consider under Idaho law whether what the government wants to do—has it done it yet? I don't know whether— Yes, they had actually built it. What they did was violative of the covenant. I believe that. Okay. And they violated the easement, and they certainly were on notice that their right to do that was being multiply challenged, and here we are. What is your remedy? Well, right, what's your remedy? I would say that the remedy, the primary—tear it out. Put it back the way it was. Get rid of the gravel and put the dirt path back where it was. That's what was supposed to be there, and that's what I would say ought to be there. If this court thinks that that's too extreme a remedy, then I would say consider transferring the case to the court of claims to provide compensation for the injury done to my clients by laying out this obtrusive manufactured— What exactly is the injury to your clients? Well, the injury is that they no longer have a bucolic area there. They've got a rather substantial manufactured raised up above ground level gravel roadway that totally changes the nature of that part of their ranch. It's just become a very different thing, and I suppose appraisal testimony would be able to tell you what the valuation difference would be. That's what I'm wondering. We ever got to it. How you measure that. You know what? What I have learned practicing eminent domain law for 50 years is that the appraisers always know. They always have an opinion anyway. They don't always know. They're like lawyers. But, you know, we were all opinionated, so they would certainly be able to tell you what they think is the difference. In this case, the appraiser who came up with, I guess, the $1.8 million that the government actually paid referred to this as a trail or corridor. And that was the word used at that point. What about a corridor is inconsistent with putting gravel on the ground? It's a question of whether it's inconsistent with what's been there and what the intent of the parties was, which was to preserve the natural beauty of this place, which the And I can't make that make sense to me when you come in and manufacture a gravel high rise trail, which is several inches above ground level now and has to be flat all the way across as opposed to a dirt path, which just sort of meandered through the area. I'd prefer to reserve the remainder of my time. Unless the court has further inquiry, I'd be happy to answer it. Let me see. What is the remainder? About a minute and a half. 1.29. Why don't you do that? Thank you. Thank you. Thank you. May it please the court. Good morning. My name is Christine England. I'm an assistant U.S. attorney from the District of Idaho representing the United States. This court should affirm the district court's judgment in favor of the United States because plaintiffs simply did not bring their claim within the Quiet Title Act's 12-year statute of limitations. Okay, let's go to that. You heard what was discussed. I'm sure you're very familiar with this particular grant. I just read it. Yes, Your Honor. How did the statute of limitations, when did it start from the government's perspective? As we've set forth in our brief, the statute of limitations accrued when the conservation easement was executed and recorded in 2005. But how can that be? It says here certain things can be done. There's a definition, a trail, and nothing happened until 2014. That's the triggering event. The signing of the document itself would not have changed what the meaning of the deed was, right? I think the district court put it really well on this particular point. She explained that the property right that the plaintiffs challenge, the right to permit public use, is the same property that the plaintiff's predecessors and interests granted to the government in May of 2005. The Forest Service's plan to actually construct a trail within the 30-foot easement area and thereby facilitate public use did nothing to expand the public use rights granted to the government. Forgive me, counsel. That's silly. It's just silly. There was a trail there, a regular trail that was continued by virtue of the deed. Nothing more. It was a conservation grant, not until 2014, if I understand correctly. Your Honor, you do not. Was there any discussion about adding asphalt? Your Honor, you do not understand correctly. Okay, please correct me. There has been no evidence in the record that there was any existing trail. And I would direct you to note 10 in our answering brief. There was no what, you said? No evidence in the record of any preexisting path at all. And I would challenge the plaintiffs to put forward any evidence in the record that there was a path predating May of 2005. And in note 10 of our answering brief, we cite you to all the evidence in the record that there was no preexisting path. Okay, well, let's say you're right. A trail has a certain meaning under Idaho law, as I understand it, which I would think, at least arguably, doesn't include raising it off the normal surface and putting asphalt there. What's wrong with that construction? Your Honor, I would quibble a little in that there is no asphalt. It is a gravel. I mean, it is a gravel trail. Forgive me, I meant gravel. And at least in terms of the Forest Service's definitions, there are at least six different classifications of trail that do run from a dirt, undeveloped trail all the way to asphalt. So from the Forest Service's perspective, trail does include a wide range of possibilities. Here, the development of the trail and the reason for the specific material chosen and the width chosen is also well laid out in the record. The expected high use of this area, the drainage, such a trail without gravel would result in a muddied, braided path. Forgive me, that was done in 2014. Will you describe what was going to be done? Is that correct? The analysis of the six-and-a-half-foot gravel trail. If that's true, and I take your point that there was no trail there, but if there is a disagreement about what trail means and the limits of the grant as far as the public is concerned is contained in this subsection K-1, if someone disagrees with that and thinks that what was done was a violation of the grant, shouldn't that go back to the district court, putting aside that there's no statute of limitations then because it's within the 12-year period, and then have the court decide under Idaho law whether, in fact, it was breached? No, I don't think so, Your Honor, and that's because the district court already concluded that the statute of limitations accrued when the easement was executed and recorded. With all due respect to the district court, that makes no sense to me. All they did is grant it. It was what it was. Nothing had been done at that point. How could it be triggered at that point? I think for three reasons. One is that the existing case law of this circuit and others makes clear that the trigger for the statute of limitations under the Quiet Title Act is an exceedingly light one, as Judge Gorsuch put it when he was on the Tenth Circuit. It's exceedingly light such that all that must be demonstrated is an adverse interest, not the express contours of the claim. So who had the adverse interest if the grantors granted the easement? Who was that person? Oh, excuse me, the United States. Well, so, but they granted, in essence, they entered into a contract in a way, and they got compensated. So they agreed to this. So why would they have any reason to sue back in 2005? If they believed that the government's position that it allowed development of a trail exceeded the scope of what had been granted, they would have been in a position to sue. But how would they have known that in 2005? Well, I think there's two ways they know that. One, the scope of the grant of the easement itself is incredibly broad. As Judge Hinkle pointed out, it grants all rights to the government except those expressly reserved. And so that's how they, if they thought that was too broad, that was the time to bring a claim. But the other thing that we have in this record that you might not have on a motion to dismiss is we have actual knowledge. We have actual knowledge on the part of the predecessor in interest, Bob Piva. And he has two letters in the record that are... Let me stop you right there. So if he had actual interest, actual knowledge, but he didn't do anything about it. That accrued the statute of limitations. Did he have any right to do anything about it? Because it seems like that multiple people were owners of this property and a group of them decided to grant the easement. What could he do adverse to the United States? If he believed that the grant of the easement exceeded what he intended to grant, then he could have sued the United States under the Quiet Title Act at that time. I want to push on this a little bit. Ultimately, our question is going to be a procedural question. Let me set it up this way. Judge Smith and I may have a different view of what a trail is. I would have thought it clear a multi-use trail might indeed be gravel. We don't have hurricanes in Idaho. Well, you probably have more trails. And I'm not sure I understand quite what the gravel is. Is it loose gravel? It's compacted gravel. It's got to be somehow that you can ride a bike over it. But on the statute of limitations issue, it seems plain to me that the briefing or the suggestion that it runs from the first time the government claims an interest, that can't be right. Because if, for example, in 2014, the government said, I've got some munitions. I need somewhere to store them, and I'm going to put them on that land. Well, that would be the first indication to the landowner, and that would start the statute. The easement itself wouldn't. And so then the question is, what did you know in 2005 as opposed to 2014, and did you know enough in 2005 to know that the government claimed a right to put gravel there? Now, here's the procedural question. This didn't get here on a summary judgment motion or the way it usually does. The judge brought it up as a subject matter jurisdiction question. And so if there's some ambiguity there, and we don't know, you're citing evidence. And so my procedural question is, was this really teed up? Did both sides have a chance to get to it? What should we do if we think, well, one might read this easement either way? Are we far enough along now to look at all the parole evidence in the record, whatever there is, these letters? Or is this something where both sides need a full chance to present their evidence? Your Honor, a couple of points. This was in front of the district court on summary judgment, and the government did raise it in its summary judgment brief. The district court then asked for further briefing upon this court's decision in Wilkins to clarify any impact of Wilkins. So both sides had not only a chance in the summary judgment brief, but a second chance in the supplemental briefing that the district court requested to address the issue. Fair enough. We've got a lot of cases. I read this too far long ago. Now you've reminded me it wasn't, you know, summary judgment. Was it fully briefed before then it turned to the jurisdictional issue and so forth? Yes, Your Honor. It was fully briefed on summary judgment. And then this court, the Ninth Circuit's decision came out in Wilkins, and the district court asked for further briefing on the statute of limitations issue and the effect of Wilkins. And so, and it was at that stage that this evidence regarding Mr. Piva's knowledge at the time the easement was granted was addressed and also addressed in the district court's opinion. Can I just ask about that? Perhaps I read it differently than you did. What I read was this is a man who was unhappy that the conservation easement was granted in the first place. He had no authority to gainsay. It was done. But that's not what we're talking about here. The question is, once it's done, what happens with it? As I view this, the grant was not all the property, unlike my colleagues view. It was specifically limited with respect to this, to what's described in K-1. And then it's a question of what does K-1 mean? And I don't see how when the conservation easement was first signed that anybody, including the government, could have known, unless it had something in its pocket, that what would have been eight, nine years later it was going to propose to make this a gravel pathway lifted up above the valley floor and so on. I don't see how that triggered the statute of limitations. You don't trigger it by just signing the document, because the document, I mean, I'm sure you've dealt with lots of conservation easements. It's a tax deal. To get tax benefit, leave things as they are. That's what it's all about. We have them in California all the time. People do it all the time. And I look at this the same way. We're going to give you these rights subject to these limitations, and what you can do there is limited. The question is, did the government breach that? You say no, and it was triggered the moment it was signed. I have trouble with that. The government intended to and, in fact, did purchase the rights to construct whatever trail it wanted. And that was its intent and what is laid out in the public trail. That's not how I read it. What's your authority for the idea that a trail permits you to lift the trail, if you will, up above the valley floor and put gravel on it? Well, Your Honor, under Idaho law, as under all property hornbook law, an easement owner is allowed to do what's reasonable and necessary to effectuate the purpose of that easement. And here— Strictly construed. Is it not against the person using the easement? Against the dominant— Under Idaho law. Yes, Your Honor, but here I believe this conservation easement overcomes that in its acquisition of all rights— But it didn't acquire all the rights. As I read here, it says, nothing herein shall be construed as affording public access except as what I just read. Right, but— That's not an overall grant. It's a limited grant of the use of this portion of the easement subject to the restrictions that are set forth in K-1. I think reading only K-1 is too narrow, Your Honor. You have to start with what is actually acquired, which is everything except for what's excluded in part— And this is what's excluded. No, no, sorry. You acquire— They acquired everything, and then in part 3, except for everything reserved. So they acquired anything except for what was reserved, and what was reserved is in part 3. And part 3 does not prohibit the government's right to construct a trail. The only thing it does is it limits the plaintiff's right to control trespass. It states in part 3C, the right to prevent trespass and control access to the property by the general public is reserved except for the specific access rights granted to or acquired by the United States. And if, with respect—I'm a good lawyer—if respect, with respect, I, if I were hypothetically involved, if I disagree with your construction of this contract, isn't what we do send it back to the district court to have an evidentiary hearing to consider how it should be construed? I don't think so, Your Honor. And the reason is, again, if you don't agree that the express provisions of the easement put the plaintiff's predecessor on notice, then you can go to the actual notice, which you can find in the record and was cited by the district court. It's at SCR, sorry, 3 SCR 529 and 525 is where you find the actual notice. What did that notice say? Well, it's an interesting compilation of documents. In 2014, after the— That's 2014. Oh, no, one minute, please. Okay. Okay. In 2014, after the proposed action came out, Mr. Piva wrote to the Forest Service and said nothing in the proposed action has changed since the acquisition in 2005 in my 2000, which I addressed in my 2005 letter. And he also attaches that. And so Mr. Piva, the current owner of the property, writes to the Forest Service in 2014 and says that nothing in the plan has changed, indicating that Mr. Piva was on notice, actual notice in 2005 of what the Forest Service acquired and intended to do. And I think those— That's one way to look at it. And, well, I think those two letters show the actual notice as well. I see that my time has expired, Your Honors. If there are no further questions, I'd ask that this Court affirm the District Court and grant judgment in favor of the government. Thank you very much, counsel. Mr. Berger, you have a bit of time left. I want to get you to address my procedural question. On summary judgment, you had the opportunity to put in any parole evidence you had on the meaning of this deed. That's true, isn't it? I suppose it is. So if we looked at all the evidence in the record and said, applying the summary judgment standard, this trail, this deed includes the right to put in the asphalt, you lose. True? But the evidence doesn't show that, Your Honor. All right. But what parole evidence do you have that supports you other than the deed itself? Well, there is testimony from both my clients and the previous owners about the use of the trail before 2005, which counsel disputes. But there is testimony in the record about that. Your friend on the other side says that there was no trail. There was no trail. There is testimony that there was a trail. That's just—it's in the record. Well, if— She's wrong. I'm sorry. With all due respect. Did anybody testify who was there and involved in the deed originally say, here's what this meant at the time? I know. I was there. This is what I intended? I don't recall that being there. Because nobody thought it. They didn't think it was an issue at that point. No, no. You certainly knew it was an issue when you were presenting your summary judgment papers. Sometimes when you have an ambiguous contract, the testimony includes somebody who was a part of the contract saying, here's what I meant. You don't have any of that. True? I don't believe there is, Your Honor. And that was—if I can spend half a moment on Bob Piva. Bob Piva's letter, he was not an owner of the property in 2005. He was not one of the people who negotiated the deal with the government in 2005. For some reason, he was shut out by the rest of his family. But he complained about it because he didn't like the deal. But to use his letter from 2005 as some evidence that everybody knew there was a problem, he's the wrong guy. When he wrote again in 2014, he did have standing to write that letter, but that's well within the statute of limitations. Well, you're saying what he knew in 2005 can't be attributed to the owners who granted the deed. He wasn't one of them, for whatever reason. And that could come out at a trial. You suppose they didn't get his letter? The government? No, the other owners of the property. When he wrote the letter in 2005 complaining about all this, you suppose he kept it secret from the others? I—no, I don't suppose he did at all. It sounded to me like there was some intrafamily dispute going on here, but he was not one of the PIVAs who owned the property. So if he wrote the letter in 2005 and the other owners were aware of it, and then he wrote a letter in 2014 as an owner and said the situation now is exactly the same as it was in 2005, why isn't that evidence that they all knew in 2005 the same thing they were complaining about in 2014? Because nothing had—when he says nothing has changed, he was complaining about it, true. But there was nothing being done in 2005 or 2006 or 2007, anywhere up to 2014, that anybody knew about. The government kept all of that close to its chest and decided in 2014 to make public what it thought the document meant. But that doesn't mean anybody else knew that that was what the government thought until 2014. And Mr. Piven, he did not say in his letter, I knew in 2005 or 2006 that the government was going to put gravel on a trail. He certainly didn't know the detail. He didn't know that. Nobody knew the detail in 2005. And that is, in fact, what has triggered the litigation, right? It's the placement of the gravel on the trail. That is what triggered— that's the adverse use. You know, all of this requires, as counsel said, actual knowledge of some adverse use. And there was no adverse interest by the government in 2005. The fact that the trail use was changed from a matter of grace to a matter of right didn't change anything until they announced their plans in 2014 to pave this thing. That makes it a whole different use. And that's where the adversity comes in. And that's why it's well within the statute. Thank you, Your Honor. Right. Thank you, counsel. Sawtooth Mountain Ranch v. United— U.S. Forest Service has submitted and will—
judges: WARDLAW, SMITH, UNKNOWN